IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VICTOR RILEY, )
    Petitioner, )
) Civil Action No. 13-3 Erie
v. ) Magistrate Judge Susan Paradise Baxter
BOBBY L. MEEKS, et al., )
)
    Respondents. )

# OPINION AND ORDER[1]

Pending before the Court is a petition for a writ of habeas corpus filed by Petitioner, federal prisoner Victor Riley, pursuant to 28 U.S.C. § 2241. He is challenging a disciplinary action taken against him in which he lost good time credits. As relief, he seeks an order from this Court directing that his incident report be expunged so that he may be restored the good time credit he lost as a sanction.

For the reasons set forth below, the Court will deny the petition.

## I.

**A.**    **Relevant Factual Background**

On November 28, 2010, Petitioner was designated at FCI Sandstone in Sandstone, Minnesota. On that date, an incident report was issued for misconduct alleged to have occurred at 11:25 a.m. at the I-Unit entrance. The reporting staff, Correctional Officer David Bliss, wrote:

> While opening the unit door, to allow an inmate on crutches and a food service worker back into I-Unit, I was standing with my back to the left door frame, when I was startled by someone trying to slide behind and past me into the unit. When I turned around I advised the inmate, later identified as [Petitioner], that he was not going to be allowed to go back inside since he left for lunch early with the food service workers. At that point I advised [Petitioner] to step away from the doorway. [Petitioner] did not obey instead he kept his hand on the door. I then repeated my order to step away from the doorway. At

---

[1]    In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

1

this point [Petitioner] still would not step away from the door, so I informed [Petitioner] with two direct orders to step away from the doorway. While [Petitioner] pulled his hand back from the door, our forearms bumped each other['s] and [Petitioner] responded "don't put your hands on me," and repeated "don't put your hands on me," "don't ever touch me." I then informed [Petitioner] again why I was not allowing him back in the unit at that time. [Petitioner] then started to approach me with both fists clinched at his sides."

(Resp's Ex. 2, Discipline Hearing Officer Packet ("DHO Packet") for Incident Report at 6, ECF No. 14-4). This encounter was witnessed by Correctional Officer Nicholas Supinger, who wrote in a memorandum that Petitioner acted so aggressively that the officer unzipped his jacket and prepared to activate his body alarm. (Id. at 12-13). As a result of the incident, Petitioner was charged with Conduct Which Disrupts or Interferes With Security, prohibited act Code 299 (most like Threatening, prohibited act Code 203) and Refusing an Order, prohibited act Code 307.

Lieutenant Santini of FCI Sandstone investigated the incident and advised Petitioner of his rights. He recorded that Petitioner stated to him:

> "I'm an orderly on the unit and I took the trash out early and the Officer let me out early." "I went to the 7-11 and got on the computer then I went to chow." "I think the Officer is racial because the 2 dudes he let in the unit were white." "I had grabbed the door." "The Officer bumped me." "I told him he was wrong for touching me." "I told him he just needed to tell me I couldn't come in and that would have been fine."

(Id. at 7).

Petitioner did not request that video evidence of the incident be reviewed by the investigator. He did request witnesses. The first witness told Lieutenant Santini: "Officer Bliss just put his arm out to stop [Petitioner] from going into the unit, he never put his hands on [Petitioner]." "Bliss is a pretty good CO[,] he['s] strait to deal with." The second witness stated: "Man I was closer to J-unit than I-unit." "The only thing I saw was Officer Bliss put his arm out to stop [Petitioner] from sliding into the unit." "Never saw him touch [Petitioner] just put his arm out to stop him and I walked away when [Petitioner] started in on Bliss." (Id.)

2

Lieutenant Santini referred the matter to the Unit Discipline Committee ("UDC") for disposition. Petitioner had a hearing before the UDC on December 2, 2010. At that time, Petitioner requested, for the first time, that video evidence of the incident be reviewed. The UDC found that Petitioner had committed the prohibited acts as alleged, and referred the matter to the DHO. (Id. at 6-7).

Petitioner's initial DHO hearing was held on December 16, 2010. The DHO inquired about the status of the video that Petitioner requested be reviewed during the UDC hearing, and was erroneously informed by staff that the video had not been saved. In light of that information, the DHO sent the Incident Report back to the UDC with a recommendation that only the Refusing an Order, Code 307, charge be handled. (Id. at 1-2). The next day, on December 17, 2010, a staff member provided the DHO with an update concerning the video issue, informing the DHO that an error had been made. Instead of staff failing to save the video, the staff member informed the DHO that there was never any video to save and/or review. (Id. at 20-21). In light of that new information, the DHO elected to hear the Incident Report as it was originally written. (Id. at 2). The DHO explained in its subsequent DHO Report:

> During the [December 16, 2010] hearing, the DHO asked about the video the inmate requested to UDC to be saved as evidence. At that time staff informed the DHO that the video was not saved. Based on that, the DHO elected to send the report back to the UDC with a recommendation the report be handled as a Code 307 only. A memorandum provided by G. Villarreal cleared up the issue of the video. There was never video of the incident. Since there was never video evidence to review, and not that the video wasn't saved, the DHO determined it would be appropriate to hear the incident report as written.

(Id. at 2. See also id. "There was simply a miscommunication about the video evidence, which was cleared up in a memorandum.")

Petitioner's DHO hearing was held on December 23, 2010. The DHO reviewed Petitioner's due process rights with him and summarized the procedural history of the matter. Petitioner elected to waive the witnesses he had previously requested and provided no further evidence. Petitioner waived his right to a staff representative. (Id.)

3

The DHO found that Petitioner committed the prohibited acts. In the DHO Report, it is explained the decision was "based on the greater weight of the evidence, staff documented eyewitness accounts, and staff memorandums." (Id.) Petitioner also was advised:

> Although you denied the charges, two staff members documented that you did refuse to move away from the door when ordered to do so. Both staff members also documented that you walked towards the staff member with your fists clenched. Although not a verbal threat, the action of approaching a staff member with your fists clenched while arguing, was threatening in action. One staff member had actually grabbed his radio in preparation to activate the body alarm…. The evidence does support the charges.

(Id.)

The DHO imposed the following sanctions: disallow 27 days of good conduct time, 14 days of disciplinary segregation, and loss of commissary, telephone, and e-mail privileges for two months for Code 299 (most like Code 203), and disallow 14 days of good conduct time, seven days of disciplinary segregation, and loss of commissary, telephone, and e-mail privileges for one month for Code 312. (Id. at 2-3).

After having no success in his administrative remedy appeal, Petitioner, who at the time was incarcerated at FCI McKean, which is located within the territorial boundaries of the Western District of Pennsylvania, commenced habeas proceedings in this Court by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. In relevant part, 28 U.S.C. § 2241 provides: "The writ of habeas corpus shall not extend to a prisoner unless … [h]e is in custody *in violation of the Constitutional or laws or treaties of the United States*[.]" 28 U.S.C. § 2241(c)(3) (emphasis added). Petitioner contends that his due process rights were violated during the disciplinary proceeding. (ECF No. 8, Petition; ECF No. 9, Memorandum of Law). Respondent has filed his Answer (ECF No. 14), in which he contends that the petition should be denied on the merits.

4

### B. Subject Matter Jurisdiction

This Court has jurisdiction over the instant petition under 28 U.S.C. § 2241, which "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the *execution of his sentence*." McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010) (emphasis added) (quoting Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001) and citing Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005)). In McGee, the Third Circuit Court instructed that "the question to be asked is whether granting the petition would 'necessarily imply' a change to the fact, duration, or execution of the petitioner's sentence." 627 F.3d at 936. In another case, it held that "[a] challenge, such as this one, to a disciplinary action that resulted in the loss of good-time credits, is properly brought pursuant to § 2241, as the action could affect the duration of the petitioner's sentence." Queen v. Miner, 530 F.3d 253, 254 (3d Cir. 2008) (per curiam) (citations omitted).

### C. Discussion

#### 1. Petitioner Has Not Established That He Is In Custody In Violation of the Constitution or laws of the United States

This Court's analysis of Petitioner's due process claims must begin with the Supreme Court's decision in Wolff v. McDonnell, 418 U.S. 539 (1974), which is the seminal case concerning the due process rights of federal prisoners during disciplinary proceedings. In that case, the Supreme Court noted that a prisoner's accumulation of good time credits, which can affect the length of his incarceration, may give rise to a constitutionally protected liberty interest. Wolff, 418 U.S. at 556-57. However, the Supreme Court noted further that this does not entitle prisoners to the full panoply of rights afforded a defendant in a criminal prosecution when these credits are forfeited pursuant to a prison disciplinary proceeding. Id. Instead, a prisoner is entitled only to procedures sufficient to ensure that the protected interest (i.e., good time credit) "is not arbitrarily abrogated." Id. at 557.

In Wolff, the Supreme Court enumerated several procedural safeguards that are required in a prison disciplinary proceeding. It stated that an inmate subject to a prison disciplinary proceeding must be afforded the following due process safeguards: (1) the right to appear before an impartial decision-making body; (2) written notice of the charges 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the fact finder as to the evidence relied upon and the rationale behind the disciplinary action. Id. at 563-72.

The BOP also has established regulations that set forth the procedures for disciplinary actions. These regulations track the requirements set forth in Wolff, and in some respects exceed the required process set forth in that case. See Inmate Discipline and Special Housing Units, See 28 C.F.R. §§ 541.10-22 (2010). Pursuant to these regulations, staff prepare an Incident Report when they reasonably believe an inmate has committed a violation of BOP regulations. 28 C.F.R. § 541.14. The incident is then referred to the UDC for an initial hearing. Id. § 541.15. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to the DHO for a hearing. An inmate's rights during a DHO hearing are set forth at § 541.17 (2010). These procedures require the following: (1) 24-hour advance written notice of charge before the inmate's initial appearance before the DHO; (2) An inmate shall be provided a staff representative at the DHO hearing, if so desired; (3) An inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; (4) the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses (although he may submit questions for requested witnesses in writing to the DHO); (5) the inmate is entitled to be

present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized.

Petitioner has failed to establish that he was denied any process due to him under the Due Process Clause or applicable BOP regulations. He argues that the alleged belated notice that no surveillance video footage was available violated his due process rights because it impeded his ability to present a defense. This argument has no merit. Petitioner was aware at his December 23, 2010, DHO hearing that no video footage was available of the incident, and had the opportunity at that hearing to present his defense after learning that information. Also without merit is Petitioner's argument that the DHO's decision to conduct the December 23, 2010, hearing violated BOP regulations. The regulation upon which Petitioner relies explains that the "DHO may refer the case back to the UDC for further information or disposition" or "may postpone or, at any time prior to making a decision as to whether or not a prohibited act was committed, may continue the hearing until a later date whenever further investigation or more evidence is needed." 28 C.F.R. § 541.17(e) (2010). The language of the regulation to which Petitioner refers is clearly permissive, not mandatory. He has not demonstrated that this regulation was violated because the DHO decided, after learning that there was never video evidence to review, to conduct a hearing on December 23, 2010.

**2.     The DHO's Determination Was Supported By the Requisite Degree of Evidence**

Petitioner also contends that the DHO's decision to find him in violation of Refusing an Order, prohibited act Code 307 "was not based on the greater weight of the evidence." (ECF No. 9 at 3). In Superintendent v. Hill, 472 U.S. 445 (1985), the Supreme Court held that "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary [officer] are supported by some evidence in the record." 472 U.S. at 454 (internal quotation

marks and citation omitted). The Hill standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. Brown v. Recktenwald, 550 F.App'x 96, 98 (3d Cir. 2013) (citing Thompson v. Owens, 889 F.2d 500, 502 (3d Cir. 1989)). The relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. (quoting Hill, 472 U.S. at 455-56). The United States Court of Appeals for the Third Circuit has explained that "the 'some evidence' standard is a standard of appellate review to be applied by the district court rather than a burden of proof in a prison disciplinary proceeding." Denny v. Schultz, 708 F.3d 140, 144 (3d Cir. 2013) (citing Brown v. Fauver, 819 F.2d 395, 399 n.4 (3d Cir. 1987)).

Petitioner has failed to establish that there was not "some evidence" to support the DHO's findings. In the present case, the DHO relied upon the reporting officer's eye witness account of the incident. Specifically, the officer reported that Petitioner attempted to slide past him into the housing unit on the date in question and that the officer stopped him. When ordered repeatedly to leave the area, Petitioner refused to comply. Instead, Petitioner approached the officer with his hands in fists and in an aggressive manner. This account was witnessed and corroborated by another officer. Moreover, the other inmates identified by Petitioner as witnesses in the investigation also offered statements that corroborated the officers' summaries.

**D.**     **Certificate of Appealability**

28 U.S.C. § 2253 codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000) (en banc), abrogated on other grounds by

Gonzalez v. Thaler, 132 S.Ct. 641 (2012); 28 U.S.C. § 2253(c)(1)(B). As such, this Court makes no certificate of appealability determination in this matter.

**II.**

For the foregoing reasons, the petition for a writ of habeas corpus will be denied. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTOR RILEY,<br>　　　Petitioner,<br><br>　　　v.<br>BOBBY L. MEEKS, et al.,<br><br>　　　Respondents. | Civil Action No. 13-3 Erie<br>Magistrate Judge Susan Paradise Baxter |

**ORDER**

AND NOW, this 10th day of March, 2015;

IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is DENIED. The Clerk of Court is directed to close this case.

　　　　　　　　　　　　　　　　/s/ Susan Paradise Baxter
　　　　　　　　　　　　　　　　SUSAN PARADISE BAXTER
　　　　　　　　　　　　　　　　United States Magistrate Judge

cc:　Notice by ECF to counsel of record and by U.S. mail to Petitioner at his address of record